FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

JUN -6 PM 12: 54

U.S. DISTRICT COURT
N.D. OF ALABAMA

CLOTILDA C. NICHOLSON,                    ]
                                          ]
    Plaintiff(s),                     ]
                                          ]
vs.                                       ]     CV-96-N-3242-NE
                                          ]
THE JACKSON COUNTY COM-                   ]
MISSION; JOE A. BUTTRAM, in               ]
his individual and represen-             ]
tative capacity; HERBERT                  ]
BRADFORD, in his representa-              ]
tive capacity; ED TUBBS, in               ]
his representative capacity;              ]
JAKE WALLINGSFORD, in his                 ]
representative capacity; and              ]
HOYT CARROLL, in his repre-               ]
sentative capacity,                       ]
                                          ]
    Defendant(s).                     ]

ENTERED

JUN 6 1997

## Memorandum of Opinion

### I.   Introduction.

In this employment discrimination action, the plaintiff, Clotilda C. Nicholson

("Nicholson"), has brought claims against the defendants, the Jackson County, Alabama

County Commission (the "Commission"); Joe A. Buttram, in his individual and official

capacity as Chairman of the Commission ("Buttram"); Herbert Bradford, in his representa-

tive capacity as County Commissioner ("Bradford"); Ed Tubbs, in his representative

capacity as County Commissioner ("Tubbs"); Jake Wallingsford, in his representative

capacity as County Commissioner ("Wallingsford"); Terry Mike Wells, Sheriff of Jackson

County, in his individual capacity ("Wells"); and Hoyt Carroll, in his representative capacity

as County Commissioner ("Carroll"). Nicholson asserts claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), the Alabama Constitution, the laws of the state of Alabama, and 28 U.S.C. § 2201. Specifically, she contends that Buttram transferred her from her position as Jackson County Administrator to an office manager position in the Public Works Department without cause and without the approval of the Commission. Consequently, she seeks relief pursuant to section 1983 for violation of the First and Fourteenth Amendments of the United States Constitution, pursuant to the Alabama Constitution for violation of procedural and substantive due process rights, pursuant to Alabama common law for breach of contract, pursuant to 28 U.S.C. § 2201 for a declaratory judgment, and seeks a Writ of Mandamus. *Complaint* at 2-7. On January 22, 1997, the court granted the plaintiff's motion to dismiss defendant Wells. The plaintiff filed a first amended complaint on March 10, 1997, stating that since the time she filed her original complaint, the County Commission reinstated her as County Administrator. She added a claim for constructive discharge, contending that after her reinstatement, Buttram created a hostile work environment such that she was forced to request early retirement. *Amendment to Complaint* at 1-2.

This matter is presently before the court on defendant Buttram's February 7, 1997, motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for a more definite statement. Pursuant to a briefing schedule entered by the court on February 11, 1997, the plaintiff responded to the motion on March 10, 1997. Attached to her responsive submission were five exhibits, none of which were previously incorporated into her complaint. The court therefore entered an order on March 28, 1997, advising the parties that it would treat the motion to dismiss as

2

one for summary judgment, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. The motion has been briefed by the parties[1] and was taken under submission at the court's regularly scheduled motion docket on May 28, 1997. Upon due consideration, the motion will be granted in part and denied in part.

## II.   Statement of Facts.[2]

The plaintiff was first employed by the Commission on January 12, 1976. During her tenure as an employee, she rose to the level of County Administrator for Jackson County. On January 20, 1981, then Chairman of the Commission, Sam Gant, II, terminated Nicholson's employment. The plaintiff subsequently filed a complaint against the then County Commissioners and the Commission on April 2, 1982. On June 7, 1985, a jury returned a verdict in favor of Nicholson against the Commission for compensatory damages in the amount of $100,000 and against Gant individually for punitive damages in the amount of $35,000. On December 16, 1985, Judge E. B. Haltom of this court ordered that Nicholson be reinstated as an employee of the Commission, a judgment that was affirmed by the Eleventh Circuit Court of Appeals on May 7, 1987. Nicholson was subsequently promoted to County Administrator in December 1990.

Defendant Buttram was elected Chairman of the County Commission in December of 1996. In November of that same year, he notified Nicholson that she was being

---

[1] The defendant failed to reply to the plaintiff's response.

[2] The facts set out below are gleaned from the parties' submission of facts and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

3

terminated as County Administrator without cause and without prejudice, effective November 14, 1996. Buttram transferred the plaintiff to the Department of Public Works as an office manager. Buttram also indicated that Nicholson could alternatively resign her employment with the Commission effective November 21, 1996.

The plaintiff contends that Buttram terminated her employment so that he could replace her as County Administrator with a political ally and supporter, Loretta Dudley. The *Daily Sentinel*, a local newspaper, reported that Buttram offered Ms. Dudley the position, which she accepted in mid-October 1996. *See Response of Plaintiff* at Ex. 1. At that time, Ms. Dudley was serving her second term on the Jackson County Democratic Executive Committee. Buttram has stated that Nicholson's transfer was not due to poor job performance or to financial cutbacks within the Commission. He was quoted in the *Daily Sentinel* on November 15, 1996, as stating that he "just wanted to choose [his] own administration". *See id.* at Ex. 2.

Nicholson avers that Buttram's actions lacked the consent of the Commission. At the Commission's November 19, 1996, meeting, it referred the matter of Nicholson's transfer to the Jackson County Personnel Appeals Board ("Personnel Board") for an opinion as to whether the transfer was appropriate or legal. At that same meeting, Buttram indicated that he would not "surrender the power granted to [him] by the Code of Alabama." *Id.* at Ex. 3. The Personnel Board discussed the issue on November 26, 1996, and issued an opinion in which it found that the transfer was inappropriate and had violated the plaintiff's rights pursuant to the Jackson County Employee Personnel Handbook.

4

On November 27, 1996, Nicholson filed a grievance with the personnel director of the Commission against the actions of Buttram in violation of the Personnel Handbook and the determination of the Personnel Board. The Commission has never taken action on the grievance.

The County Attorney, Gary W. Lackey, issued a memorandum to the Commission on December 6, 1996, in which he too opined that the transfer was inappropriate and in violation of County personnel policies. That same day, the Commission voted four to one, with Buttram as the lone dissenter, to reinstate Nicholson to her position as County Administrator. Buttram contended at that time, however, that the vote was out of order "based upon legislative act that he said authorized him to appoint the person who works for him in the commission office." *Id.* at Ex. 4. Nicholson contends that Buttram thereafter refused to allow her to resume her County Administrator duties. She subsequently filed this action on December 13, 1996.

## III. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a

6

reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

7

## IV. Discussion.

### A. Section 1983 Claims.

To state a claim pursuant to 42 U.S.C. § 1983, Nicholson must demonstrate that a person has acted "under color of any statute, ordinance, regulation, custom, or usage of any State" to deprive her of any "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff avers that Buttram violated her First and Fourteenth Amendment rights pursuant to the United States Constitution while acting under color of state law. She has brought claims against Buttram in both his individual and official capacities.

#### 1. Political Association Claim.

Nicholson asserts that Buttram "punished [her] for her lack of political support of his candidacy and has divested the plaintiff of her position as County Administrator." *Complaint* at 5. She avers such action amounts to a violation of her First Amendment right to free political association. Buttram argues, however, that "the only fact stated in the Complaint which relates to this alleged political affiliation claim is stated in Paragraph 15 as follows: '[u]pon information and belief, Buttram desired to replace Nicholson as County Administrator with a political ally and supporter, Loretta Dudley.' This simply does not rise to the level of a constitutional violation." *Memorandum Brief in Support of Motion* at 6.

A public official may not condition continuation of public employment on an employee's relinquishment of the First Amendment liberties of political belief and association. *Perry v. Sinderman*, 408 U.S. 593, 597-98 (1972); *Barrett v. Thomas*, 649 F.2d 1193, 1199-1200 (5th Cir. Unit A 1981), *cert. denied*, 456 U.S. 925 (1982). A decision to

8

discharge an employee restricts the individual liberties of belief and association central to the First Amendment. "While these rights are not absolute, they may not be trenched upon absent a showing that the liberty-restraining patronage system furthers 'some vital government end by a means that is least restrictive of freedom of belief and association.'" *Barrett*, 649 F.2d at 1200 (quoting *Elrod v. Burns*, 427 U.S. 347, 363 (1976)).[3]

The former Fifth Circuit established a three-step process for applying *Elrod* principles to section 1983 claims alleging political patronage dismissals. The plaintiff must: (1) allege conduct that, if proven, would constitute an infringement on his or her constitutional rights; and (2) make a prima facie showing that "impermissible political animus motivated the challenged personnel decisions." *Barrett*, 649 F.2d at 1200. Third, the defendant may rebut such a showing with sufficient evidence of nonpolitical motives for the challenged conduct. *Id.*

Nicholson asserts that Buttram's decision to transfer her to the Public Works Department ultimately resulted in a constructive discharge of her employment. She has established, at this early stage in the litigation of this cause, the first and second elements in the above analysis. Her complaint alleges that Buttram based his decision to transfer her from her position as County Administrator because he wished to replace her with a political ally. She has presented evidence in the form of newspaper accounts that, if viewed in a light most favorable to her, make a prima facie showing that Buttram in fact had such

---

[3] The Supreme Court has recognized, however, that public officials may properly demand political allegiance from an employee "if that person's private political beliefs would interfere with the discharge of his public duties." *Branti v. Finkel*, 445 U.S. 507, 517 (1980). Buttram has not made such an allegation regarding Nicholson's duties, however.

9

motivation. Buttram, however, has presented no rebuttal evidence at this point aside from his conclusory denial.

The defendant further asserts, however, that even if the plaintiff can survive summary judgment on this claim, he is nevertheless entitled to qualified immunity for actions taken in his individual capacity. *Memorandum in Support of Motion* at 6. "Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right may only be clearly established where "the contours of the right [are] sufficiently clear [so] that a reasonable official . . . understand[s] that what he is doing violates that right." *Cofield v. Randolph County Comm'n*, 90 F.3d 468, 470 (11th Cir. 1996).

Qualified immunity almost always protects government actors; "only in exceptional cases will [they] have no shield against claims made against them in their *individual capacities*." *Lassiter*, 28 F.3d at 1149 (emphasis in original). In fact, qualified immunity almost always applies to damage claims, but as the Eleventh Circuit has noted, "the defense is a narrow one, leaving plaintiffs other avenues of relief." *Id.* at 1149 n. 2. A plaintiff may bring a damages claim against government actors in their official capacity absent Eleventh Amendment immunity or may seek injunctive relief. *Id.*

The Eleventh Circuit has established a two-part analysis for qualified immunity. The initial burden is on the public official to establish, at the time of the occurrence of the

10

matters complained of, that he was acting within the scope of his discretionary authority. *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983). Then, in order to impose liability upon defendant government officials, the plaintiff must establish the absence of objective good faith by demonstrating that "the official's alleged misconduct was 'objectively unreasonable' in that it violated clearly established law." *Schopler v. Bliss*, 903 F.2d 1373, 1380 (11th Cir. 1990) (quoting *Harlow*, 457 U.S. at 818). "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Lassiter*, 28 F.3d at 1150.

The burden is on the plaintiff in this instance to establish that Buttram, while acting in his individual capacity, violated law regarding Nicholson's right to free political association that was clearly established at that time. The law as it existed at the time relevant to the plaintiff's complaint was in fact clearly established and was substantially the same as it exists presently and as outlined above. Viewing the facts in a light most favorable to the plaintiff, Buttram should have been aware that transferring Nicholson or, alternatively, requesting her resignation in order to replace her as County Administrator with a political ally was an improper infringement on her right to free political association unless he could demonstrate that such action furthered a vital government goal and was the least restrictive means of accomplishing such a goal. Nothing in the limited evidentiary record at this stage of the cause of action indicates that Buttram's actions with regard to the plaintiff were in furtherance of such a governmental interest and were narrowly tailored

11

to do so. His actions were therefore in violation of clearly established law. Accordingly, he is not entitled to qualified immunity for actions performed in his individual capacity with regard to the plaintiff's First Amendment claim. The motion for summary judgment to the extent it seeks dismissal of the political affiliation claim therefore will be denied.

### 2. **Federal Due Process Claims.**

The plaintiff contends that Buttram violated her right to procedural and substantive due process. To determine whether there has been a breach of due process rights, the court must consider whether Nicholson has been deprived of a protected interest in life, liberty, or property, and if so, what process is due her. *E.g.*, *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994), *cert. denied sub nom*, *McKinney v. Osceola County Bd. of County Comm'rs*, 513 U.S. 1110 (1995). Liberty interests are violated when a person's "good name, reputation, honor, or integrity" is jeopardized because of the government's actions. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972). Property interests may arise from "state statutes, local ordinances, contracts, rules and regulations, and mutually explicit understandings." *Bishop v. Wood*, 426 U.S. 341, 345 (1976).

### a. **Procedural Due Process Claims.**

A violation of procedural due process does not occur "unless and until the State fails to provide due process." *McKinney*, 20 F.3d at 1557. The plaintiff asserts that Buttram violated her right to procedural due process in three ways: (1) he refused "to implement the decisions of the Jackson County Personnel Board and the Jackson County Commission regarding [her] reinstatement;" (2) the plaintiff's November 27, 1996, grievance was never heard; and (3) the Commission did not hold a pre-transfer hearing "before Buttram forced

12

the transfer or resign [sic] pursuant to Buttram's November 13, 1996, letter." *Response of Plaintiff* at 10.

### (1) Property Interest in Employment Position.

Under Alabama law, an employee's property interest in his or her job may be established by an employee handbook. *See Davis v. University of Montevallo*, 638 So. 2d 754, 756-57 (Ala. 1994). The 1990 version of the Jackson County Employee Personnel Handbook establishes that

a]ll persons, now or hereafter, employed by the county will remain in their respective employment as long as their performance is satisfactory, their position is necessary and/or funds are available to support the position. However, nothing contained herein should be construed as preventing the removal of any employee, now or in the future, in the manner prescribed by these policies and procedures.

*Response of Plaintiff*, Ex. 5 at 1. The policies as set out in the Handbook allow an appointing authority to transfer an employee "to a comparable position in another department, if he/she is qualified for the position" as long as the employee consents. *Id.*, Ex. 5 at 12. The County grievance procedure requires an employee to bring his complaint to the attention of the authority that appointed him or her. Thereafter, the employee may elevate the grievance to the Personnel Board, who subsequently must notify the complainant of the hearing date, hold a hearing, and enter a decision within ten days of the hearing. *Id.*, Ex. 5 at 30-32. The Handbook does not require the Personnel Board to hold the hearing within any stated period.

The Handbook therefore creates for the plaintiff a property interest in continued employment as County Administrator as long as her performance is satisfactory and the

13

position remains necessary and funded. Further, Buttram could not transfer her to another department without her consent. The facts viewed in favor of the plaintiff establish that Buttram violated the County's personnel policies by transferring Nicholson to the Public Works Department without her approval. Buttram has made no allegation that the plaintiff's job performance was unsatisfactory or that the County Administrator position was being eliminated. Jackson County does not require its Personnel Board to hear grievances within any time period, however, nor does it require the County Commission to hold pre-transfer hearings for County employees. The plaintiff thus cannot claim as part of her procedural due process claim that the Board's failure to hear her grievance was a violation of constitutional rights, for the Board may possibly have heard the matter at a later date. She also cannot maintain that she was denied a pre-transfer hearing.

Buttram argues, however, that the Personnel Handbook cannot create such a contract or expectation because it contravenes Alabama law. *Memorandum in Support of Motion* at 10. On August 4, 1971, the Alabama legislature passed Local Act No. 210 which provides that "[t]he Chairman of the County Commission of Jackson County shall be authorized to appoint the Clerk of the County Commission and such other clerical assistance as he may deem necessary." Buttram contends that this legislation takes precedence over any right created by the Handbook and that the right to appoint carries with it the right to dismiss as well.[4] *Id.* This assertion is unsupported by the evidentiary record, however. While the legislation acts to give Buttram, as Chairman of the Jackson

---

[4] The defendant makes this argument with regard to Nicholson's breach of contract claim, but it is equally applicable with regard to the procedural due process claim.

14

County Commission, the power to appoint clerical assistance for the Commission, he must do so in accord with the policies set out in the Handbook, for these are the policies that give Nicholson a legitimate expectation that her employment as County Administrator will continue so long as her performance is satisfactory and the position remains necessary and funded. There is nothing in the evidentiary record to suggest that the Local Act takes precedence over the rights contained within the Handbook, and Buttram has cited to the court no case law to support such a contention. Therefore, the court must assume that the two sources of law are not mutually exclusive but rather work in tandem — that is, the Local Act gives Buttram the power to hire and possibly fire the plaintiff, but he must do so in accordance with the procedures established in the Handbook for all County employees.

Buttram contends, however, that Nicholson's position was one of "unclassified service" as defined by the Handbook and that his actions were therefore proper.[5] Positions of unclassified service include "those . . . in which the incumbent is considered to be the principal assistant to an elected official." *Response to Motion*, Ex. 5 at 6. The tenure of such an employee is "completely at the pleasure of his/her appointing authority and he/she may be terminated at anytime [sic] after reasonable notice." *Id.* Buttram thus argues that the plaintiff served at his will and his decision to transfer her to the Public Works Department was legitimate and appropriate. There is no evidence, however, establishing that Nicholson, as County Administrator, was considered to be Buttram's principal assistant. The court therefore cannot determine whether the plaintiff was regarded as an employee

---

[5] Buttram makes this argument with regard to the state law procedural due process claim, but it is equally applicable to the federal claim as well.

of unclassified service. It accordingly must assume that she was not and was instead considered to be a "classified" employee. The above quoted provisions of the Handbook with regard to transfer and termination, therefore, would have applied to her as County Administrator, and she had a resultant property interest in that position.

The defendant cites, however, the Eleventh Circuit opinion of *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994), in further support of his assertion that Nicholson has no procedural due process claim regarding her continued employment as County Administrator. *Memorandum Brief in Support of Motion* at 7. *McKinney* stands for the proposition that there is no deprivation of procedural due process rights unless there is no state remedy for the deprivation, either administratively or legally. *Id.* at 1560. Nicholson asserts that she "attempted to use every avenue available to her in order to regain her position as County Administrator" and that *McKinney* therefore does not act as a bar to her claims. *Response of Plaintiff* at 9-10.[8]

The plaintiff may have exhausted her remedies administratively, but she has not done so legally. Instead of pursuing the remedies available to her in Alabama courts, she chose to bring this action in federal court.[7] She has not argued that state court remedies are inadequate to provide her the relief to which she claims entitlement, and the court's

---

[8] The plaintiff makes this assertion in conjunction with her substantive due process claim, *see discussion infra*, but because such a contention is inapplicable to a substantive due process claim, the court will assume she intended to assert it with regard to her procedural due process claim.

[7] The appropriate fora for redressing injuries such as those alleged here are state "agencies, review boards, and . . . courts." *McKinney*, 20 F.3d at 1560.

16

review of the jurisdiction of the Alabama courts demonstrates that those courts are completely capable of providing full relief to Ms. Nicholson.

The circuit courts of Alabama are courts of general jurisdiction with the power to adjudicate practically any claim, including claims that public employees were disciplined in violation of procedural due process rights.[8]   The Alabama courts have amply demonstrated both their power and their willingness to hear such claims. *E.g., Belcher v. Jefferson County Bd. of Educ.*, 474 So. 2d 1063 (Ala. 1985); *Floyd v. Alabama Historical Comm'n*, 388 So. 2d 182 (Ala. 1980); *Hardy v. Birmingham Bd. of Educ.*, 601 So. 2d 87 (Ala. Civ. App. 1991), *rev'd on other grounds*, 601 So. 2d 93 (Ala. 1992); *Miller v. Alabama State Tenure Comm'n*, 451 So. 2d 301 (Ala. Civ. App. 1984). Furthermore, state courts may hear claims pursuant to 42 U.S.C. § 1983, *Ex parte City of Tuskegee*, 447 So. 2d 713, 715 (Ala. 1984), and such tribunals have jurisdiction to review employment actions on an extraordinary writ, *see id.*, as well as on a suit for judgment. *Stallworth v. City of Evergreen*, 680 So. 2d 229 (1996), *cert. denied*, ___ U.S. ___, 117 S. Ct. 509 (1996). Accordingly, because the plaintiff cannot state a federal claim that she was deprived of a right to procedural due process with regard to a property interest in continued employment, the defendant's motion to the extent it addresses such claim will be granted.

---

[8] The circuit courts of Alabama are authorized to "exercise general jurisdiction in all cases except as may otherwise be provided by law," Ala. Const. amend. 328, § 6.04, and are specifically given "exclusive original jurisdiction of all civil claims in which the matter in controversy exceeds $10,000.00." Ala. Code § 12-11-30 (1995). The circuit courts' equity jurisdiction extends "[t]o all civil actions in which a plain and adequate remedy is not provided in the other judicial tribunals." § 12-11-31 (1977).

17

## (2) Liberty Interest in Good Reputation.

Nicholson also apparently makes a claim that Buttram deprived her of a liberty interest in her good name by removing her as County Administrator and thus violated her right to procedural due process. *See Response to Motion* at 11. In order to state such a claim, the plaintiff must allege "(1) stigmatizing information; (2) which is false; (3) made public; (4) by the governmental organization." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993). While the court has a duty pursuant to the Federal Rules of Civil Procedure to construe Nicholson's complaint liberally, such a duty "is not the equivalent of a duty to re-write it for her." *Id.* In her complaint, she avers that "[t]he acts of the defendants . . . have exposed her to public ridicule and scorn, and have injured her reputation and character as a public servant and employee." *Complaint* at 5. Such allegation is insufficient to meet her burden, however. She must plead the circumstances of her transfer with "sufficient clarity so as to 'give the defendant fair notice of what the plaintiff's claim is *and the grounds upon which it rests.*'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (emphasis added in *Peterson*). Nicholson alleges no false information made public by Buttram that exposed her to such alleged ridicule; rather, she avers that his *actions* caused such harm. She cannot make out a claim of deprivation of liberty interest in her good reputation based on such contentions; therefore, the motion for summary judgment will be granted with regard to the federal procedural due process liberty interest claim.

18

## b.   Substantive Due Process Claim.

Nicholson contends that Buttram "has attempted to abuse, twist and misconstrue Alabama law in order to play 'good ole' boy' politics" in violation of her substantive due process rights as provided for in the Personnel Handbook. *Response of Plaintiff* at 9-10. "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *McKinney*, 20 F.3d at 1556 (quoting *Palko v. State of Connecticut*, 302 U.S. 319, 325 (1937)). Because the Supreme Court has been reluctant to expand the concept of substantive due process, public employment law remains largely outside its scope. *McKinney*, 20 F.3d at 1556 (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577-78 (1972)). Rather, substantive rights in employment are created by state law and not by the Constitution. *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985).

Nicholson has made no factual allegation that could support a federal substantive due process claim. In her response to the motion to dismiss, she asserts that the rights upon which Buttram has allegedly trampled are created by state law and the Jackson County Personnel Handbook. Clearly, any substantive due process rights she might have pursuant to these authorities are created by the state of Alabama and not by the United States Constitution. Accordingly, the defendant's motion to the extent it seeks summary judgment on the plaintiff's federal substantive due process claim will be granted.[9]

---

[9] The plaintiff attempts to argue in her responsive submission that "the analysis of this case is identical to the analysis applied in *Harrah Ind. School District v. Martin*, 440 U.S. 194 . . . (1979)." The Eleventh Circuit cited *Harrah* as an example of a case involving "legislative" acts as opposed to "nonlegislative" or "executive" acts. *McKinney*, 20 F.3d at 1557 n. 9. In *Harrah*, the School Board instituted a new rule precluding the renewal of contracts of those teachers who refused to take continuing education courses. It then applied that rule to

19

## B.    State Due Process Claims.

The plaintiff also asserts that Buttram violated her procedural and substantive due process rights as guaranteed by the constitution and laws of the state of Alabama. *Complaint* at 6. Article I, section 6 of the Alabama Constitution provides that citizens shall not "be deprived of life, liberty, or property, except by due process of law."

### 1.    Procedural Due Process Claim.

As discussed above with regard to Nicholson's federal due process claims, the Jackson County Personnel Handbook created a property interest for the plaintiff in her position as County Administrator as long as she performed satisfactorily and the position remained necessary and funded. No one, therefore, could deprive her of the position without affording her procedural process.

Again, the defendant asserts with regard to this claim that Nicholson's position was one of "unclassified service" as defined by the Handbook and that the plaintiff thus served at his will and his decision to transfer her to the Public Works Department was legitimate and appropriate. *Memorandum Brief in Support of Motion* at 9. As discussed above, however, the court has insufficient evidence by which to determine conclusively that the plaintiff was regarded as an employee of unclassified service and must therefore assume that she was instead considered to be a "classified" employee. The above quoted provisions of the Handbook with regard to transfer and termination, therefore, would have

---

Martin. The Court, however, analyzed the rule itself and not the Board's application of the rule to Martin. Therefore, the Court examined the case as one involving a legislative act. *Harrah*, 440 U.S. at 198-99. The instant case bears no similarity to these facts; thus, *Harrah* is inapplicable.

applied to her as County Administrator, and she had a resultant property interest in that position.

The inquiry then focuses on whether Nicholson was afforded procedural due process when Buttram transferred her from the position. "[D]ue process is satisfied where there has been a proper exercise of the powers delegated in the appropriate statutes." *Berry v. City of Huntsville*, 259 So. 2d 269, 276 (Ala. Civ. App. 1971), *cert. denied*, 259 So. 2d 276 (1972) (citing *Ex parte Gudenrath*, 69 So. 629 (Ala. 1915)). The parties' submissions with regard to the motion to dismiss do not address this issue. Accordingly, the court will deny the motion with regard to the plaintiff's state procedural due process claim.

### 2. Substantive Due Process Claim.

Nicholson's complaint avers a substantive due process violation pursuant to the guarantees of the laws of Alabama and the Alabama Constitution. *See Complaint* at 6. While her factual allegations do not clearly indicate the precise deprivation of rights imposed upon her by Buttram, the defendant did not address this issue in his submission. Therefore, the court will allow this claim to remain.

### C. Breach of Contract Claim.

Nicholson asserts that the Personnel Handbook created a "contract for employment and a legitimate expectation of continued employment as County Administrator." *Complaint* at 6. As discussed above with regard to the federal claim for procedural due process, the Handbook does create such a property interest.

The defendant contends, however, that this claim is nevertheless due to be dismissed because the plaintiff seeks only damages for mental anguish with respect to the claim. He avers that she has not lost pay or benefits as a result of his decision to transfer

21

her to the Public Works Department and thus may not seek compensatory damages. *Memorandum in Support of Motion* at 10. Buttram's assertion that damages for emotional distress are not allowed in a breach of contract claim in Alabama is correct. *See Southern Medical Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 101 (Ala. 1995) (court declined to recognize rule authorizing recovery of damages for mental distress). Buttram has offered no evidence, however, to support his assertion that the plaintiff has no claim for compensatory damages. Accordingly, as Nicholson has made out a prima facie case of breach of contract under Alabama law and the defendant has not refuted that case, the claim will not be dismissed.

## D.   Petition for Writ of Mandamus.

In the plaintiff's complaint, she requests that the court issue a Writ of Mandamus against Buttram compelling him to reinstate her as County Administrator and to "refrain from interfering with her duties." *Complaint* at 7. Since the time Nicholson filed her complaint, the Commission reinstated her as Administrator, and she subsequently sought and received early retirement. *Amendment to Complaint* at 1-2. Consequently, her petition for a writ of mandamus is now moot.

## E.   Request for Declaratory Judgment.

Nicholson's final count in her complaint requests that the court enter a judgment pursuant to 28 U.S.C. § 2201 declaring that the County Commission "has the authority under law to determine matters regarding [her reinstatement] and that it further has the authority to control and direct its Chairman regarding such matters." *Complaint* at 7-8. Again,

22

however, since she subsequently was reinstated by the Commission and then retired, her request for a declaratory judgment is now moot.

### F.   Constructive Discharge Claim.

The plaintiff amended her complaint on March 10, 1997, to add a claim for constructive discharge. *See Amendment to Complaint* at 2. The defendant's motion does not address this claim, however. Thus, the claim will not be dismissed.

### V.   Conclusion.

Accordingly, the defendant's motion to dismiss that the court has treated as a motion for summary judgment will be granted in part and denied in part. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this ____6th____ of June, 1997.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

23