FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

98 JAN 13 AM 10: 10

U.S. DISTRICT COURT
N.D. OF ALABAMA

CLOTILDA C. NICHOLSON,                    ]
                                          ]
        Plaintiff(s),                     ]
                                          ]
vs.                                       ]        CV-96-N-3242-NE
                                          ]
THE JACKSON COUNTY COM-                   ]
MISSION; JOE A. BUTTRAM, in               ]
his individual and represen-              ]
tative capacity; HERBERT                  ]
BRADFORD, in his representa-              ]
tive capacity; ED TUBBS, in               ]
his representative capacity;              ]
JAKE WALLINGSFORD, in his                 ]
representative capacity; and              ]        ENTERED
HOYT CARROLL, in his repre-               ]
sentative capacity,                       ]        JAN 13 1998
                                          ]
        Defendant(s).                     ]

## Memorandum of Opinion

### I.   Introduction.

In this employment discrimination action, the plaintiff, Clotilda C. Nicholson ("Nicholson"), brings claims against the defendants, the Jackson County, Alabama County Commission (the "Commission"); Joe A. Buttram, in his individual and official capacity as Chairman of the Commission ("Buttram"); Herbert Bradford, in his representative capacity as County Commissioner ("Bradford"); Ed Tubbs, in his representative capacity as County Commissioner ("Tubbs"); Jake Wallingsford, in his representative capacity as County Commissioner ("Wallingsford"); Terry Mike Wells, Sheriff of Jackson County, in his individual capacity ("Wells"); and Hoyt Carroll, in his representative capacity as County

65

Commissioner ("Carroll"). Nicholson asserts claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), the Alabama Constitution, and the laws of the state of Alabama. Specifically, she contends that Mr. Buttram transferred her from her position as Jackson County Administrator to an office manager position in the Public Works Department without cause and without the approval of the Commission.

Consequently, Ms. Nicholson seeks relief pursuant to section 1983 for violation of the First and Fourteenth Amendments of the United States Constitution, pursuant to the Alabama Constitution for violation of procedural and substantive due process rights, pursuant to Alabama common law for breach of contract, pursuant to 28 U.S.C. § 2201 for a declaratory judgment, and seeks a Writ of Mandamus. *Complaint* at 2-7. On January 22, 1997, the court granted the plaintiff's motion to dismiss defendant Wells. The plaintiff filed a first amended complaint on March 10, 1997, stating that since the time she filed her original complaint, the County Commission reinstated her as County Administrator. She added a claim for constructive discharge, contending that after her reinstatement, Mr. Buttram created a hostile work environment such that she was forced to request early retirement. *Amendment to Complaint* at 1-2.

On June 6, 1997, the court granted in part and denied in part defendant Buttram's February 7, 1997, motion to dismiss, which the court treated as one for summary judgment pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. In this June 6, 1997, order, the court dismissed Ms. Nicholson's section 1983 claims against Mr. Buttram for violation

2

of her Fourteenth Amendment due process rights,[1] and dismissed her petition for a writ of mandamus and her request for a declaratory judgment pursuant to 28 U.S.C. § 2201 as being moot.

This matter is presently before the court on the motions for summary judgment filed by defendant Buttram on October 31, 1997, and by the defendant Commission and Mr. Buttram, Mr. Bradford, Mr. Tubbs, Mr. Wallingford and Mr. Carroll, in their representative or official capacities as members of the Commission, also filed on October 31, 1997. The motions have been briefed by the parties and are ripe for decision. Upon due consideration, the motions will be granted.

## II.   **Statement of Facts.**[2]

The plaintiff was first employed by the Commission on January 12, 1976. During her tenure as an employee, she rose to the level of County Administrator for Jackson County. On January 20, 1981, then Chairman of the Commission, Sam Gant, II, terminated Nicholson's employment. The plaintiff subsequently filed a complaint against the then County Commissioners and the Commission on April 2, 1982. On June 7, 1985, a jury returned a verdict in favor of Nicholson against the Commission for compensatory damages in the amount of $100,000 and against Gant individually for punitive damages in the amount of $35,000. On December 16, 1985, Judge E. B. Haltom of this court ordered that Nicholson be

---

[1] In an order entered on June 18, 1997, the court amended its June 6, 1997, order such that plaintiff's section 1983 claims for violation of her Fourteenth Amendment due process rights were dismissed without prejudice.

[2] The facts set out below are gleaned from the parties' submission of facts and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

reinstated as an employee of the Commission, a judgment that was affirmed by the Eleventh Circuit Court of Appeals on May 7, 1987. Nicholson was subsequently promoted to County Administrator in December 1990.

Ms. Nicholson's duties as County Administrator included: preparation of the county budget; conducting budget hearings; maintenance of inventory records and budget statements; receipt, deposit, investment and disbursement of all county funds; maintenance of the county's fiscal accountability; preparation and maintenance of Commission meeting minutes; and supervision of the Commission's office staff. As County Administrator, Ms. Nicholson was the primary or main assistant to the commission chairman. Indeed, Ms. Nicholson, as County Administrator, reported directly to the county commission chairman.[3] *See Plaintiff's Exhibit A* (Job Description of County Administrator).

In 1990, the Commission adopted Personnel Policy Statements of the County Commission of Jackson County and Rules, Regulations and Procedures Governing the Jackson County Personnel System, which are found in the *1990 Personnel Handbook*, and which were in effect at all times material to this action.

Seeking office on the Jackson County Commission, Mr. Buttram ran unopposed in the 1996 general election and on November 5, 1996, was elected. Mr. Buttram actually took office on November 12, 1996. Ms. Nicholson gave no candidate for commissioner or commission chairman her public support during the 1996 election campaign. Ms.

---

[3] The plaintiff disputes this fact and argues that Ms. Nicholson, as County Administrator, *also* served as the primary or main assistant to the County Commission. However, the plaintiff fails to rebut the language contained in her own job description. As a result, the defendant's characterization of the plaintiff's responsibilities will be deemed admitted for summary judgment purposes here.

4

Nicholson spoke with Mr. Buttram for the first time on November 12, 1996, which was Mr. Buttram's first day in office as commission chairman. At the time Mr. Buttram took office, there were five employees in the Commission office working under his general supervision. Ms. Nicholson was the County Administrator/Clerk; Teresa Hester was the Assistant County Administrator/Accounts Payable Clerk; Shirley Morris was the Personnel Director/Payroll Clerk; Betty Sisco was the Accounting Clerk; and Evelyne Morris was a clerical assistant, who assisted with filing, typing, answering the telephone, and other clerical matters.

On November 13, 1996, Mr. Buttram presented Ms. Nicholson with a letter informing her that she was being transferred to the Public Works Department and would be employed there as office manager and that, if she did not accept the transfer, she would be terminated immediately. Mr. Buttram transferred Ms. Nicholson because he wanted to hire his own administrator–a person he knew and trusted–and he did not know Ms. Nicholson well.[4] Mr. Buttram offered the newly-vacated position of County Administrator to Loretta Dudley because he believed she was qualified to handle the job and because he felt that he could trust her and work well with her.[5] Mr. Buttram never questioned Ms. Nicholson regarding her political views or who she supported for chairman of the county commission or for any elective office. Mr. Buttram was not aware of whether Ms. Nicholson supported him or

---

[4] Ms. Nicholson disputes this fact, and offers various excerpts from Mr. Buttram's deposition in rebuttal. However, none of these cited excerpts contravene in any way this fact. Accordingly, this fact will be deemed admitted for summary judgment purposes.

[5] The plaintiff disputes this fact and offers evidence in support. However, the evidence cited by the plaintiff does not rebut this fact. Indeed, the plaintiff cites the deposition of Jake Wallingford where Mr. Wallingford specifically testified that Mr. Buttram offered the County Administrator position to Ms. Dudley because "he needed somebody that [sic] was loyal to him." *Plaintiff's Exhibit E*, at 27 (Wallingford Deposition). Accordingly, this fact will be deemed admitted for summary judgment purposes.

another candidate for elective office during the 1996 election. Mr. Buttram's actions were, however, taken without the consent or approval of the Commission. Ultimately, Ms. Dudley was never actually hired as County Administrator or in any other capacity. Mr. Buttram also indicated that Ms. Nicholson could alternatively resign her employment with the Commission effective November 21, 1996. While working as office manager at the Public Works Department, Ms. Nicholson received no reduction in pay, no reduction in benefits and worked shorter hours than she had in her position as County Administrator.

Ms. Nicholson avers that Mr. Buttram's actions lacked the consent of the Commission. At the Commission's November 18, 1996, meeting, it referred the matter of Ms. Nicholson's transfer to the Jackson County Personnel Appeals Board ("Personnel Board") for an opinion as to whether the transfer was appropriate or legal. The Personnel Board discussed the issue on November 26, 1996, and issued an opinion in which it found that the transfer was inappropriate and had violated the plaintiff's rights pursuant to the Jackson County Employee Personnel Handbook.

On November 27, 1996, Ms. Nicholson filed a grievance with the personnel director of the Commission against the actions of Mr. Buttram in removing her from her position as County Administrator against the wishes of the Commission and the Personnel Board.

The County Attorney, Gary W. Lackey, issued a memorandum to the Commission on December 9, 1996, in which he, too, opined that the transfer was inappropriate and in violation of County personnel policies. That same day, the Commission voted four to one, with Mr. Buttram as the lone dissenter, to reinstate Nicholson to her position as County Administrator. Ms. Nicholson contends that Mr. Buttram thereafter refused to allow her to

6

resume certain of her County Administrator duties, which included consulting with auditors from the State Examiners of Public Accounts; performing job performance evaluations on other employees; and having her signature placed on the bank signature card and signing checks. She subsequently filed this action on December 13, 1996.

After being reinstated to the County Administrator position, Ms. Nicholson worked in that position until May 1, 1997, when she voluntarily retired.

## III. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

7

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983) (indicating the standard for summary judgment is

8

"[s]ubstantively . . . very close" to that for motions for directed verdict). However, the
nonmoving party "must do more than simply show that there is some metaphysical doubt
as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.
574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative,
summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted);
*accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must
"view the evidence presented through the prism of the substantive evidentiary burden," so
there must be sufficient evidence on which the jury could reasonably find for the plaintiff.
*Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir.
1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing
of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the
nonmovant is to be believed and all justifiable inferences are to be drawn in his favor."
*Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference
but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12
(11th Cir. 1988).

## IV. Discussion.

### A. Section 1983 Claims.

#### 1. Official Capacity Claims.

Ms. Nicholson brings claims against the Commission and against Mr. Buttram, Mr.
Bradford, Mr. Tuggs, Mr. Wallingsford, and Mr. Carroll in their "representative" or official
capacities as commissioners on the Commission. When an officer is sued under section
1983 in his or her official capacity, the suit is simply "another way of pleading an action

9

against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105 (citing *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 2035 n.55, 56 L. Ed. 2d 611 (1978))); *see also Farred v. Hicks*, 915 F.2d 1530, 1532 (11th Cir. 1990). Such suits against local government officers are therefore, in actuality, suits directly against the governmental entity that the officer represents. *See Busby*, 931 F.2d at 776.

Consequently, a plaintiff cannot rely on a *respondeat superior* theory to hold a local government unit liable for individual actions of its officers. *See id.* The Eleventh Circuit has squarely held that, in actions brought pursuant to section 1983, when the government entity represented by the public official who has been sued in his or her official capacity is also a party to the litigation, the official capacity claims are to be dismissed. *See id.* Because the Jackson County Commission is named as a defendant in this action, Ms. Nicholson's claims brought pursuant to section 1983 against the five commissioners in their representative or official capacities are redundant and, therefore, such claims will be dismissed with prejudice.

### 2.    First Amendment Political Association Claim.

To state a claim pursuant to 42 U.S.C. § 1983, Ms. Nicholson must demonstrate that a person has acted "under color of any statute, ordinance, regulation, custom, or usage of any State" to deprive her of any "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff avers that Mr. Buttram violated her First and Fourteenth Amendment rights pursuant to the United States Constitution while acting under color of state law. She has brought claims against Mr. Buttram in both his

10

individual and official capacities.[6] As outlined *supra*, the official capacity claims have been dismissed as against Mr. Buttram but remain as claims against the Commission.

### a. Political Association Claim Against Mr. Buttram in His Individual Capacity.

Ms. Nicholson asserts that Mr. Buttram "punished [her] for her lack of political support of his candidacy and has divested the plaintiff of her position as County Administrator." *Complaint* ¶30. Ms. Nicholson further claims that "Buttram desired to replace Nicholson as County Administrator with a political ally and supporter, Loretta Dudley." *Id.* ¶15. She avers such action amounts to a violation of her First Amendment right to free political association.

A public official may not condition continuation of public employment on an employee's relinquishment of the First Amendment liberties of political belief and association. *Perry v. Sinderman*, 408 U.S. 593, 597-98 (1972); *Barrett v. Thomas*, 649 F.2d 1193, 1199-1200 (5th Cir. Unit A 1981), *cert. denied*, 456 U.S. 925 (1982). Indeed, some employees have a general First Amendment right not to be fired for political patronage reasons. *See Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) (plurality opinion); *Branti v. Finkel*, 445 U.S. 507, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980). An employee might have this right if political affiliation is not an appropriate requirement for the effective performance of the job. *See Branti*, 445 U.S. at 518-20, 100 S. Ct. at 1295; *see also Terry v. Cook*, 866 F.2d 373, 377 (11th Cir. 1989). A decision to discharge an employee

---

[6] Ms. Nicholson makes no allegation that the Jackson County Commission itself or any of the other named defendants in this action did anything amounting to a violation of her First Amendment right to free political association.

restricts the individual liberties of belief and association central to the First Amendment. "While these rights are not absolute, they may not be trenched upon absent a showing that the liberty-restraining patronage system furthers 'some vital government end by a means that is least restrictive of freedom of belief and association.'" *Barrett*, 649 F.2d at 1200 (quoting *Elrod v. Burns*, 427 U.S. 347, 363 (1976)).[7]

The former Fifth Circuit established a three-step process for applying *Elrod* principles to section 1983 claims alleging political patronage dismissals. The plaintiff must: (1) allege conduct that, if proven, would constitute an infringement on his or her constitutional rights; and (2) make a prima facie showing that "impermissible political animus motivated the challenged personnel decisions." *Barrett*, 649 F.2d at 1200. In other words, the plaintiff must show here that she was transferred or discharged "for refusal to support a political party or its candidates unless political affiliation is a reasonably appropriate requirement for the job in question." *O'Hare Truck Service, Inc. v. City of Northlake*, ___ U.S. ___, 116 S. Ct. 2353, 2355 (1996). Third, the defendant may rebut such a showing with sufficient evidence of nonpolitical motives for the challenged conduct. *Barrett*, 649 F.2d at 1200.

Ms. Nicholson asserts that Mr. Buttram's decision to transfer her to the Public Works Department ultimately resulted in a constructive discharge of her employment. Thus, she has established here the first element in the above analysis.

---

[7] The Supreme Court has recognized, however, that public officials may properly demand political allegiance from an employee "if that person's private political beliefs would interfere with the discharge of his public duties." *Branti v. Finkel*, 445 U.S. 507, 517 (1980).

As to the second element, Ms. Nicholson has failed to produce evidence that her transfer/alleged constructive discharge was accomplished because she "refused to support a political party or its candidates." As defendant Buttram points out, the uncontroverted evidence in this case demonstrates that Ms. Nicholson had worked for Democratic chairmen for years and had, a decade before, publicly supported Democratic chairman Sebring for election. Mr. Buttram, the person she claims violated her First Amendment right to political affiliation, was a Democrat who ran in the general election without Republican opposition. Moreover, Ms. Nicholson testified that she publicly supported no candidates during the 1996 election. *See Defendant Buttram's Exhibit A*, at 59-60 (Nicholson deposition). Mr. Buttram never asked Ms. Nicholson who she had supported during the election or if she had supported him. The chairman for whom Ms. Nicholson had most recently worked, Houston Kennamer, was not a candidate for re-election in the 1996 campaign. As a result, Ms. Nicholson has failed to state a prima facie section 1983 claim alleging an illegal political patronage transfer and/or dismissal.

Indeed, the court concludes that Ms. Nicholson's allegations do not invoke a political affiliation claim analysis. Virtually all of the cases relied upon by Ms. Nicholson involve factual scenarios where an incoming elected official dismissed subordinates who were affiliated with the competing political party or where the defendant public official retaliated against a citizen who had overtly supported a competing candidate. *See Elrod v. Burns*, 427 U.S. 347, 350 (1976) ("The complaint alleged they were discharged or threatened with discharge solely for the reason that they were not affiliated with or sponsored by the Democratic Party."); *Branti v. Finkel*, 445 U.S. 507, 508, 100 S. Ct. 1287, 1289 (1980) (plaintiffs

13

demonstrated "that the petitioner public defender was about to discharge them solely because they were Republicans"); *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 65-68 (1990) (addressing claims that employees suffered adverse employment practices because they lacked sufficient Republican credentials or support); *O'Hare Truck Service, Inc. v. City of Northlake*, ___ U.S. ___, 116 S. Ct. 2353, 2355-56 (1996) (extending political affiliation protection to independent contractors that refused to comply with demands for political support and openly supported an opposing party candidate). As Mr. Buttram has pointed out in his brief, none of these cases directly address the situation where both the employer and the employee are members of the same political party and where the defendant candidate/official had no knowledge of whom the employee did or did not support in the most recent election. Accordingly, Mr. Buttram's motion for summary judgment will be granted as to Ms. Nicholson's political association claim brought pursuant to section 1983 in his individual capacity.[8]

## b.    Political Association Claim.[9]

In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Supreme Court held that local governments may not be held liable under section 1983 on a theory of *respondeat superior*. Instead, local government bodies may

---

[8] In addition, even if Ms. Nicholson *could* make such a showing, based upon the evidence in the present case, Mr. Buttram is able to rebut such a showing with evidence of his nonpolitical motives for the challenged conduct. *See Barrett*, 649 F.2d at 1200. The record reflects that Mr. Buttram simply wanted to install a County Administrator he knew and trusted. He knew and trusted Loretta Dudley, who was his first choice for the County Administrator position.

[9] This claim was formerly referred to as the plaintiff's First Amendment Political Association claim brought against Mr. Buttram in his official capacity. Pursuant to *Busby v. City of Orlando*, 931 F.2d 764, 776 (11ᵗʰ Cir. 1991), the court now treats this claim as one against the Commission. *See supra* Part (IV)(A)(1).

only be held liable for the execution of a governmental policy or custom. As the *Monell* Court explained:

> [I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694, 98 S. Ct. at 2037-38.

Later, in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986), the Supreme Court clarified *Monell*'s "policy or custom" requirement. In *Pembaur*, the Court explained that local government "liability may be imposed for a single decision by [local government] policymakers under appropriate circumstances." *Id.* at 480, 106 S. Ct. at 1298. In particular, "where action is directed by those who establish governmental policy, the [local government entity] is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Id.* at 481, 106 S. Ct. at 1299. Thus, liability may arise from "a course of action tailored to a particular situation and not intended to control decisions in later situations," *id.* at 481, 106 S. Ct. at 1299, provided that "the decisionmaker possesses final authority to establish [local government] policy with respect to the action ordered," *id.* at 481, 106 S. Ct. at 1299 (plurality opinion) (footnote omitted).

As the defendants point out in their reply submission, it is unclear from Ms. Nicholson's response whether she is arguing that the Commission is liable to her under a theory of *respondeat superior* for the actions of Mr. Buttram or if she is arguing that Mr. Buttram is the final policy-making authority as to Ms. Nicholson's employment as County Administrator. *See Reply Submission in Response to Exhibit "D" of the Court's Order of*

15

*Movants Jackson County Commission and County Commissioners*, at 2. Ms. Nicholson does not use either term in her response. The only argument in this regard is the single sentence on page 3 of the response:

> Clearly, the actions of the chairman of the county commission is a statement of the actions of the county, and the county must be responsible for those actions.

*Opponent's Responsive Submission in Response to Defendant Jackson County Commission's Motion for Summary Judgment,* at 3.

The court disagrees, however, with Ms. Nicholson's imputation of actions by Mr. Buttram to the Commission. The Personnel Policy Statements of the County Commission of Jackson County, which are contained in the *Personnel Handbook*, provide that the Commission is the sole policy-maker for the County on employment issues in general and political activities of employees in particular.[10] The policy of the Commission as it relates to the First Amendment right to free political association is set forth in two separate places in the *Personnel Handbook*, as follows:

> NOW, THEREFORE, BE IT RESOLVED that the county commission of Jackson County does hereby adopt and proclaim the following personnel policy statements:

---

[10] The *Personnel Handbook* states, in pertinent part, the following:

    A.    The Jackson County personnel system shall be governed by the rules, regulations, procedures, and plans to be approved by the County Commission.

. . .

    C.    The foregoing resolution and the personnel system adopted herein is a statement for the administration of county personnel matters and may be amended, altered, or changed as dictated by subsequent circumstances by a resolution of the Jackson County Commission in accordance with established procedures.

*Defendants Exhibit 1* (Personnel Handbook).

I.    Equal Employment Opportunity:
Jackson County is an equal opportunity employer
and does not discriminate in any employment
policies or practices on the basis of age, sex,
race, religion, color, national origin, marital
status, *political affiliation*, or handicap.

C.    POLITICAL OR RELIGIOUS ACTIVITY PROVISIONS.
1.    *No individual covered by the county
personnel system will be appointed,
promoted, demoted, or dismissed from a
county position because of his/her politi-
cal* or religious *opinions or affiliations*.

*Defendants Exhibit 1* (Personnel Handbook). These provisions appear to establish with

clarity that the County Commission is the final policy-making authority with regard to the

County's personnel system and Ms. Nicholson's employment as County Administrator.

Moreover, the *Personnel Handbook* contains the following specific provisions with

regard to transfers and terminations:

2.    A regular status classified or part-time service employee
may, with his/her approval, be transferred to a compara-
ble position in another department, if he/she is qualified
for the position, both appointing authorities agree, *and
the transfer is approved by the county commission*.

*Defendants Exhibit 1* (Personnel Handbook, at section (V)(B)(2)) (emphasis added).

As to the County Commission's policy on dismissals, the *Personnel Handbook*

provides that:

d.    No individual will be dismissed for any authorized
political activity or lack thereof.:
e.    Regular status classified service employees may appeal
their dismissals in accordance with the county griev-
ance procedures.

*Id.* (Personnel Handbook, at section (VI)(6)(d)).

17

Even accepting Ms. Nicholson's argument that she was transferred to the Public

Works Department and was subsequently constructively terminated as County Administra-

tor by Mr. Buttram as punishment for her lack of political support for him, there exists no

liability as to the Commission for Mr. Buttram's actions. Relevant to the analysis is the

Eleventh Circuit's recent articulation as follows:

> In light of *Pembaur*, this Court has interpreted *Monell's* policy
> or custom requirement to preclude § 1983 [local government]
> liability for a subordinate official's decisions when the final
> policymaker delegates decisionmaking discretion to the
> subordinate, but retains the power to review the exercise of that
> discretion:
>> [T]he mere delegation of authority to a subordi-
>> nate to exercise discretion is not sufficient to give
>> the subordinate policymaking authority. *Rather,*
>> *the delegation must be such that the subordi-*
>> *nate's discretionary decisions* are not
>> constrained by official policies and *are not*
>> *subject to review.*

*Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997) (quoting *Mandel v. Doe*, 888

F.2d 783, 792 (11th Cir. 1989)) (emphasis in original).

In the present action, the Commission simply did not delegate to Mr. Buttram the

authority to transfer Ms. Nicholson. The *Personnel Handbook* specifically provided that any

such transfer required the approval of the Commission. The official policy of the

Commission was unequivocal that it " . . . does not discriminate in any employment policies

or practices on the basis of . . . political affiliation . . ." and that no employee could be

dismissed from a county position "because of his/her political or religious opinions or

affiliations." If Mr. Buttram acted to punish Ms. Nicholson for her lack of political support,

such action was clearly in violation of the official policies of the Commission. The transfer

and alleged constructive termination of Ms. Nicholson were each subject to review by the Jackson County Personnel Board under the applicable grievance procedure. As a result, Mr. Buttram simply was not the final policy-maker with regard to the plaintiff's employment with the Commission. Accordingly, the defendant's motion for summary judgment will be granted as to Ms. Nicholson's section 1983 political affiliation claims brought against the Commission.

### 3.   Federal Due Process Claims.

#### a.   Federal Due Process and Liberty Interest Claims Against the Commission.

The plaintiff contends in her civil complaint that the County Commission – via the acts of Mr. Buttram, Mr. Bradford, Mr. Tubbs, Mr. Wallingsford, and Mr. Carroll -- have violated her right to procedural and substantive due process, and have deprived her of a liberty interest in her good name. On June 6, 1996, the court granted summary judgment to Mr. Buttram as to Ms. Nicholson's individual capacity claims brought against him pursuant to section 1983 for alleged violations of procedural due process, for deprivation of her liberty interest in her good name, and for substantive due process. *See Order entered June 6, 1997.* The Commission argues that the same facts and the same legal principles apply to Ms. Nicholson's remaining federal constitutional claims against it and, as a result, such claims should be dismissed. The plaintiff has offered no argument to counter the Commission's contention on this point. Upon due consideration, the court hereby adopts the relevant analysis contained in its June 6, 1997, order, and will grant the Commission's motion for summary judgment as to Ms. Nicholson's remaining federal constitutional claims.

19

### b.   Federal Due Process and Liberty Interest Claims Against Mr. Buttram in His Individual Capacity.

As explained *supra*, on June 6, 1997, the court granted Mr. Buttram's prior motion for summary judgment with regard to Ms. Nicholson's individual capacity claims brought against him pursuant to section 1983 for alleged violations of procedural due process as relate to a property interest in employment, for deprivation of her liberty interest in her good name, and for substantive due process. *See Order entered June 6, 1997.* On June 18, 1997, the court amended its June 6, 1997, order and clarified the dismissal of Ms. Nicholson's Fourteenth Amendment due process claims as being done without prejudice. Mr. Buttram now argues that the court should dismiss these claims with prejudice. *See Joseph Buttram's Initial Submission in Response to Exhibit D of the Court's Order*, at 13.

Upon due consideration, the court will grant Mr. Buttram's motion. As to Ms. Nicholson's individual capacity claims brought against him pursuant to section 1983 for alleged violations of procedural due process as relate to a property interest in employment, for deprivation of her liberty interest in her good name, and for substantive due process, Mr. Buttram's motion will be granted and the court's June 18, 1997, order will be amended to reflect that such claims are dismissed with prejudice.

### B.   State Law Claims.

The plaintiff also asserts that the defendants violated her procedural and substantive due process rights as guaranteed by the constitution and laws of the state of Alabama, and that the defendants breached an alleged employment contract. *Complaint* at 6. Pursuant to § 1367(c)(3), the court may decline to exercise supplemental jurisdiction if it "has

20

dismissed all claims over which [this court] had original jurisdiction." Further, the Eleventh Circuit has stated, "[I]n the absence of any issues of federal law and with no federal subject matter jurisdiction being present, pendent jurisdiction may not be exercised by the federal court." *Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"). There being no other federal claims before the court, the related and remaining state law claims in this action will be dismissed without prejudice. The period of limitations was tolled for the period the case was pending in this court and will be tolled for a period of 30 days after entry of this order, unless state law provides for a longer tolling period. 28 U.S.C. § 1367(d).

## V.   Conclusion.

Accordingly, the defendants' motions for summary judgment will be granted. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this  /2 *th* of January, 1998.


_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE